IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KIARA MCGOWAN,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendant. | Civil No. 2:25-cv-12429<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Kiara McGowan ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties

1

as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in New Boston, Michigan.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to

third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant was not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

12. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other

4

information is independently gathered by Defendant from third party providers, vendors or repositories, like computerized reporting services like PACER.

18. Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

19. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

20. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

21. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make

lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in Defendant' reports.

22. The information Defendant includes in consumer reports contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

23. FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of his or her creditworthiness.

24. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

    b.  The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

25.    Lenders also consider a consumer's debt-to-income ratio ("DTI") based on the total amount of debt reported by Defendant in their consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

26.    A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

27.    Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

28.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for the consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

29.    A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

30.    Defendant is well aware that the effect of a Discharge Order in a

Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged; both such exceptions are rare and, furthermore, are identified on the individual consumer's bankruptcy docket sheet.

31.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

32.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

33.     However, Defendant regularly reports inaccurate information about consumers after they receive a Discharge Order.

34.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

35.     Defendant regularly publishes consumer information that conflicts with information provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly

8

accesses, and/or sourced through Defendant's independent and voluntary efforts.

36. Defendant's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

37. Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681e(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

38. Defendant's unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

39. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

40. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendant's own files.

41. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

42. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which causes Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

### *Allegations Specific to the Credit Reporting of Plaintiff*

43. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about November 19, 2024, in the United States Bankruptcy Court for the District of Eastern District of Michigan (Case No. 24-50981-lsg).

44. Plaintiff received an Order of Discharge on or about February 21, 2025.

45. Thereafter, Plaintiff was not personally liable for her dischargeable debts. All dischargeable debts carried zero-dollar balances after the bankruptcy discharge.

46. Defendant prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

48. Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

49. Defendant obtained notice of Plaintiff's Chapter 7 bankruptcy discharge through its routine, independent collection of consumer information from

third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

50. Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

51. Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance but did not.

52. Defendant inaccurately reported Plaintiff's Kickoff Lending account (the "Kickoff Account"), ending with *****553 and opened in May 2023, which pre-dated Plaintiff's bankruptcy filing.

53. The Kickoff Account was included in Plaintiff's bankruptcy and discharged on or about February 21, 2025. Therefore, the Kickoff Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

54. However, Equifax inaccurately reported the Kickoff Account as a "Collection/Charge-off" with a balance of $220.00.

55. Defendant did not indicate that the Kickoff Account was discharged in bankruptcy or report the Kickoff Account with a zero-dollar balance, despite

11

reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as having been included in bankruptcy.

56. Notably, the other national consumer reporting agencies, Experian and Trans Union, did not inaccurately report the Kickoff Account like Defendant.

57. Kickoff Lending furnished information to Defendant that indicated Plaintiff's debt was included or discharged in bankruptcy and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data they received.

58. Alternatively, Defendant knew from past experiences that Kickoff Lending furnished inaccurate information regarding discharged debts or has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

59. Nevertheless, Defendant blindly relied on the information provided by Kickoff Lending even though this information conflicted with or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

60. Defendant's reliance on the furnisher was therefore unreasonable.

61. Defendant inaccurately reported that Plaintiff owed a balance that she did not actually owe, and also reported inaccurate account statuses and/or payment

12

histories.

62. Defendant inaccurately reported the Kickoff Account as a "Collection/Charge-off" account after the Kickoff Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

63. Defendant failed to indicate that the Kickoff had a zero-dollar balance and/or was included/discharged in Chapter 7 Bankruptcy, and instead inaccurately reported the account as an open "Collection/Charge-off" account.

64. Defendant's reporting of the Kickoff Account is patently false/incorrect and therefore inaccurate.

65. If not patently false/incorrect, Defendant' reporting of the Kickoff Account is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

66. After Plaintiff's bankruptcy discharge, in or around April 2025, Plaintiff applied for an unsecured credit card with Capital One but, upon information and belief, was denied due to Defendant's inaccurate reporting of the Kickoff Account.

67. Defendant's inaccurate reporting of the Kickoff Account, along with additional information belonging to Plaintiff, was published to multiple potential creditors by Defendant during the process of Plaintiff's credit applications.

68. As a direct result of Defendant' inaccurate reporting, Plaintiff suffers

damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

69. Additionally, Plaintiff suffered economic damages in the form of attorneys' fees incurred for a necessary review of her credit reports.

70. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## COUNT I
### Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

72. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

73. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after she received a Discharge Order.

74. Defendant independently sought information about Plaintiff's

14

bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

75. When Defendant procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

76. Defendant knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Defendant knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

77. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

78. Additionally, Defendant possesses or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

79. Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of her rights under the

15

FCRA.

80. In this case, Defendant inaccurately reported accounts that Defendant knew pre-dated Plaintiff's Chapter 7 Bankruptcy and were included and discharged by Plaintiff's bankruptcy discharge.

81. Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing and date of discharge.

82. Defendant is also on notice from other tradelines reported by Defendant that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

83. Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

84. Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

85. Yet in this case, Defendant reported the Kickoff Account, which pre-dated Plaintiff's bankruptcy, as a "Collection/Charge-off" account without any indication the account was discharged or had a zero-dollar balance.

86. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information

16

included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

87. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

88. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

89. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

90. Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

91. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

92. Defendant is the direct and proximate cause of Plaintiff's damages.

93. Defendant is a substantial factor in Plaintiff's damages.

94. Therefore, Defendant is liable for actual and statutory damages,

punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

a. Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

b. An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

c. An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

d. An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

e. An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

f. Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 6th day of August 2025.

*By: /s/ Ryan D. Peterson*
Ryan D. Peterson, MI Bar #P76538
CONSUMER JUSTICE LAW FIRM PLC
6600 France Ave, Suite 602
Edina, Minnesota 55435
T: (651) 315-7656
E: rpeterson@consumerjustice.com

*Attorneys for Plaintiff*
*Kiara McGowan*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER JUSTICE LAW FIRM PLC**

By: */s/Moises Masedman*